Raymond S. MACKEY and The Red Dog
Saloone, Plaintiffs in Error,

v.

The STATE of Oklahoma ex rel. Curtis P.
HARRIS, District Attorney of Oklahoma
County, Oklahoma, Defendant in Error.

No. 43952.

Supreme Court of Oklahoma.

March 14, 1972.

William C. Majors, Oklahoma City, for plaintiffs in error.

Curtis P. Harris, Dist. Atty., by D. K. Cunningham, Asst. Dist. Atty., Oklahoma City, for defendant in error.

BARNES, Justice.

Here, the question is whether the trial court committed reversible error in its order padlocking The Red Dog Saloone (hereinafter called "Red Dog"), which was owned and operated by the plaintiff in error, Ray-

mond S. Mackey. This establishment and its owner will hereinafter be referred to collectively as "defendants".

Defendants in error, hereinafter referred to as "plaintiff", brought this action on December 8, 1969. The prayer in plaintiff's petition contained the following language:

"Petitioners pray for relief from said public nuisance by an order to the Sheriff of Oklahoma County to padlock said business . . . and for such other and further relief as the Court may deem proper."

The petition set out in detail the alleged facts and circumstances that petitioners felt substantiated the allegation that Red Dog was a public nuisance and should be padlocked. Among other things it was alleged in the petition that a Writ of Prohibition had previously been issued against defendants in the Oklahoma County District Court's Cause No. 182060 on April 17, 1969.

A show cause order served on defendants December 8, 1969, pursuant to said petition, advised them that a petition had been filed alleging that "The Red Dog Saloone is being and has been operated as a common public nuisance and asking for an order of injunction to padlock the doors and enjoin defendants from further creating and/or permitting the public nuisance at said premises, and for such other and further relief as the Court may deem proper . . ." The order directed defendants to appear in court on December 15, 1969.

On the latter date, defendants appeared and asked for a continuance to prepare for the case, and the Court granted such continuance until December 18, 1969. On the latter date, defendants reserved their rights to plead further, but made oral motions to strike certain portions of the petition and filed demurrers. The motions and demurrers were overruled and the case proceeded to trial.

After hearing the testimony and arguments of counsel, the Court, on December 19, 1969, found that the Red Dog was a public nuisance and entered a temporary order of injunction padlocking it until further order of the Court.

Defendant's first Proposition for reversal of said order is that "The Trial Court erred in overruling defendants' demurrers at the show cause hearing" in that:

A. Plaintiff's petition failed to allege plaintiff had pursued and exhausted all legal remedies it might have or to show that all legal remedies available are inadequate to give the plain, speedy and adequate relief to which it might be entitled.

B. Plaintiff's petition showed on its face that plaintiff had already obtained an injunction against the defendants which was still in effect and res judicata as to the second injunction action.

C. The prayer of plaintiff's petition was fatally defective in that it failed to ask for a finding that the operation of the business was a public nuisance and failed to ask for either a temporary injunction or a permanent injunction.

■ Defendants' contention that plaintiff's petition was defective because plaintiff did not allege it had pursued and exhausted all legal remedies, etc., is untenable because it fails to recognize that the authority for plaintiff's action is statutory. By statute, the District Attorney has authority to abate a public nuisance. Tit. 50 O.S.1971, § 11. The statutory definition of "nuisance" is set forth in Tit. 50 O.S.1971, § 1, as follows:

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

"First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or,

"Second. Offends decency; or,

"Third. Unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, stream, canal or basin, or

any public park, square, street or highway; or,

"Fourth. In any way renders other persons insecure in life, or in the use of property."

A "public nuisance" is defined by Tit. 50 O.S.1971, § 2, and the remedies against such a nuisance are set forth in Tit. 50 O.S.1971, § 8. Tit. 12 O.S.1971, § 1397, provides:

"* * * An injunction may be granted in the name of the State to enjoin and suppress the keeping and maintaining of a common nuisance. * * *"

None of the cases cited by defendant involve abatement of a public nuisance by the State. There is no requirement in the statutes that the District Attorney exhaust all legal remedies first. In Balch v. State ex rel. Grigsby, Co. Atty., 65 Okl. 146, 164 P. 776, we held:

"A public nuisance may be abated by a civil action brought by the state on the relation of the county attorney of the county in which such public nuisance exists."

Since the authority is provided by statute, it was not necessary for the State to rely on the court's general equitable powers.

█ Under contention B, above, defendants contend that a restraining order issued against them in Cause No. 182060, supra, is res judicata of the issues in the present action. The testimony in the present case showed that conduct of its patrons in and around the Red Dog had continued to be a public nuisance. Events leading up to the granting of the restraining order were established for the purpose of showing the court that a restraining order was not adequate and that abatement was the only answer. We reject plaintiff's argument concerning res judicata because this case is based upon events and conduct which occurred after the restraining order was granted in Cause No. 182060. Plaintiff cannot complain because, in the first case, a lesser restriction was imposed than was later found necessary in the present case.

█ As to contention C, it would have been better pleading for plaintiff to have stated in his petition and prayer that he was asking for a temporary restraining order padlocking the defendant's business, but, as we stated in Boose v. Hanlin, Okl., 346 P.2d 932, 935:

". . . we feel this issue is determined more by the import of the allegations contained in the pleading than by the particularity, exactness or ineptness with which they are stated."

A careful examination of the record shows that defendant Mackey was aware that plaintiff was seeking to abate a public nuisance by padlocking his business. Plaintiff first sought an ex parte order padlocking the Red Dog, but the Trial Judge insisted on a show cause order to afford defendants a hearing. The record repeatedly shows that defendants fully understood it was plaintiff's desire to padlock the Red Dog Saloone and that was the intent of plaintiff's petition.

█ Defendants' Proposition II asserts that this action should have been brought by one or more of the affected property owners instead of by the State, on relation of the District Attorney. The statutes do provide that under certain circumstances private individuals may initiate actions on account of public nuisances, but this was certainly not intended to limit the State's authority to bring such an action.

Defendants next allege that the trial court's findings of fact do not support its judgment.

The Court found that a nuisance existed because of the way defendants' customers conducted themselves outside the Red Dog building. In his oral remarks from the Bench, he stated:

"The thing that does concern me with reference to the Red Dog Saloone is the conduct of the people coming in and out of it, relative to the location chosen by the owner of the Red Dog Saloone. Now, I don't think there is any question but

what people utilizing the Red Dog Saloone, going to it and patronizing it, have shouted obscenities on the premises from time to time. I don't think there is any question but what individuals have been guilty of urinating in public in the presence of people that live out there. I don't think there is any question but what the people that have been drinking beer, come out of any beer tavern, and from time to time operate their automobiles in a less than desirable fashion, because of the use of alcohol, in my opinion, destroys, to a certain extent, inhibitions and you'll do things when you have been drinking that you wouldn't do otherwise. So I think the people that come out of the Red Dog Saloone, after having consumed beer therein, have, from time to time, zipped out on Western so to speak, and gone both north and south, and also up Tedford Way. So, if the operation of the Red Dog Saloone in the location chosen by the respondent in this case is such that it annoys the neighborhood, a residential area, then it is a proper matter for the Court to take cognizence of, and may constitute a public nuisance."

 It is our opinion that the above refers to matters sufficient to support the temporary injunction and that the judgment is amply supported by the evidence.

Defendants' final contention is that the trial court erred in prohibiting the use of the business property for other legitimate business purposes. The order appealed from contains no language purporting to prohibit the property's use for the operation of any business other than that of "the Red Dog Saloone." (In this connection, see Gragg v. State, 73 Okl. 132, 175 P. 201.) And as far as the record discloses, no question as to whether the padlocking of the building had that practical effect ever came before the trial court prior to the lodging of the present appeal. Thus, no such question is now before us.

As defendants' arguments have shown no sufficient cause for reversing it, the order and/or judgment of the trial court is hereby affirmed.

All Justices concur.